**FILED**

NO. 5:08-CT-3012-FL

SEP **2 0** 2010

DENNIS R. IAVARONE, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

|                          |   |       |
|--------------------------|---|-------|
| LACY LEE WILLIAMS,       | ) |       |
|                          | ) |       |
| Plaintiff,               | ) |       |
|                          | ) |       |
| v.                       | ) | ORDER |
|                          | ) |       |
| CENTRAL PRISON, et al.,  | ) |       |
|                          | ) |       |
| Defendants.              | ) |       |

Plaintiff Lacy Lee Williams, a pretrial detainee, filed this action pursuant to 42 U.S.C. § 1983. This matter comes before the court on the motion to dismiss (DE # 60) filed by defendant Gerald J. Branker, the renewed motion for judgment on the pleadings (DE # 58) filed by defendants Branker and defendant Jewel M. Harris, and the motion for extension of time (DE # 62) filed by defendants Branker and Harris. Also before the court is the motion for summary judgment (DE # 72) filed by defendants Joseph M. Lightsey, Olushola J. Metiko, Gabriel A. Kyerematen, and Anne Christopher.[1] Finally, before the court is the motion for discovery and for re-evaluation of the preliminary injunction (DE # 44), filed by plaintiff. For the following reasons, the court grants the motion for judgment on the pleadings of defendants Branker and Harris and grants the motion for summary judgment of defendants Kyerematen, Lightsey, and Metiko. The court dismisses plaintiff's

---

[1] Defendants Lightsey, Metiko, Kyerematen, and Christopher state in their motion for summary judgment that they incorporate and adopt the arguments made in the motion for judgment on the pleadings filed by defendants Branker and Harris. (Defs.' Mem. Supp. Mot. for J. on the Pleadings 3).

claim without prejudice. The court denies plaintiff's motion for discovery and re-evaluation of the preliminary injunction and defendant Branker's motion to dismiss and motion for extension of time.

## STATEMENT OF THE CASE

On January 24, 2008, plaintiff brought this action pursuant to 42 U.S.C. § 1983, alleging that defendants were deliberately indifferent to his serious medical condition in violation of the Fourteenth Amendment of the United States Constitution.[2]

On September 3, 2008, defendants Branker and Harris filed a motion for judgment on the pleadings, arguing that plaintiff's claim should be dismissed for failure to exhaust his administrative remedies. Plaintiff filed a response on September 16, 2008. On September 18, 2008, defendants Kyerematen, Metiko, Lightsey, and Christopher filed a motion to dismiss, arguing that plaintiff failed to state a claim upon which relief may be granted.

On June 16, 2009, this court entered an order dismissing plaintiff's claims against defendants Branker and Harris without prejudice for failure to exhaust administrative remedies. The court also noted that it was unclear whether plaintiff exhausted his administrative remedies with respect to the remaining defendants. Accordingly, the court provided plaintiff fifteen (15) days to state whether he exhausted his administrative remedies against defendants Kyerematen, Metiko, Lightsey, and Christopher. Defendants Kyerematen, Metiko, Lightsey, and Christopher thereafter were given ten (10) days to file a response.

---

[2] Confinement conditions of state pretrial detainees are evaluated under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). However, the analysis under the Due Process Clause and the analysis under the Eighth Amendment share much in common. See Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992).

2

On June 29, 2009, plaintiff filed a response to this court's June 16, 2009 order. Plaintiff thereafter filed a motion for a preliminary injunction. On July 10, 2009, defendants Kyerematen, Metiko, Lightsey, and Christopher filed a response to plaintiff's June 29, 2009 pleading. On September 22, 2009, this court entered an order granting in part and denying in part the motion to dismiss filed by defendants Lightsey, Metiko, Kyerematen, and Christopher. These defendants' motion was granted with respect to plaintiff's state law claim for medical malpractice, but denied with respect to his remaining claims. Plaintiff's motion to reconsider this court's ruling on the motion for judgment on the pleadings filed by defendants Branker and Harris was granted. The court then vacated its June 16, 2009 order dismissing defendants Branker and Harris, and reinstated these parties to the action. Finally, the court denied plaintiff's motion for a preliminary injunction.

On September 28, 2009, plaintiff filed a motion for discovery and motion for re-evaluation of his motion for a preliminary injunction. Defendants filed a motion for a protective order on October 5, 2009. On October 7, 2009, defendants Kyerematen, Metiko, Lightsey, and Christopher also filed a motion for a protective order. On November 2, 2009, the court granted defendants' motions for a protective order.

On November 12, 2009, defendants Branker and Harris filed a motion for judgment on the pleadings, arguing that plaintiff failed to exhaust his administrative remedies before filing this action. Defendant Branker filed a contemporaneous motion to dismiss, arguing that plaintiff's supervisor liability claim against him is without merit. On the same date, defendants Branker and Harris also filed a motion for an extension of time in which to file additional dispositive motions.

On January 19, 2010, defendants Kyerematen, Metiko, and Lightsey filed a motion for summary judgment, arguing that plaintiff failed to exhaust his administrative remedies before filing

3

this action. Alternatively, defendants Kyerematen, Metiko, and Lightsey argue that plaintiff's claims are without merit.

On January 27, 2010, plaintiff filed an extension of time to respond to defendants' motions. The court granted plaintiff's motion on January 29, 2010. Plaintiff then filed a motion, requesting an enlargement of time to complete discovery. The matter was referred to Magistrate Judge Webb for ruling. Judge Webb denied plaintiff's motion for extension of time to complete discovery on April 5, 2010.

## DISCUSSION

A. Standard of Review

Defendants Branker and Harris moved this court to dismiss plaintiff's complaint pursuant to Rule 12(b)(6). Rule 12(b)(6) allows a suit to be dismissed for failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion to dismiss only determines whether a claim is stated; it does not resolve disputed facts, the merits of the claim, or applicability of defenses. Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure, § 1356 (1990)). It is not necessary, however, for the moving party to demonstrate that there is no set of facts which would entitle the non-moving party to relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007). Rather, an adequately stated claim must be supported by showing any set of facts consistent with the allegations in the complaint in order to survive a motion to dismiss. Id. A court should not dismiss a complaint that states a claim, even if it appears that the chance of recovery is remote. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982). For the purposes of ruling on a Rule 12(b)(6) motion to dismiss, the court should construe allegations in the complaint as true

4

and taken in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Republican Party, 980 F.2d at 952.

Defendants Lightsey, Metiko, Kyerematen, and Christopher have moved the court for summary judgment in this action. Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B. Analysis

Title 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his administrative remedies before filing an action under 42 U.S.C. § 1983 concerning his confinement. Woodford v. Ngo, 548 U.S. 81, 83-85 (2006); see Jones v. Bock, 549 U.S. 199, 216 (2007) ("failure to exhaust is an affirmative defense under [42 U.S.C. § 1997e]"); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005). The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford, 548 U.S. at 84. Exhaustion is mandatory. Woodford, 548 U.S. at 85; Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Once within the district

5

court's discretion, exhaustion in § 1997e(a) cases is now mandatory."); Anderson, 407 F.3d at 677. A prisoner must exhaust his administrative remedies even if the relief requested is not available under the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001). "[U]nexhausted claims cannot be brought in court." Jones, 549 U.S. at 211.

The North Carolina Department of Correction ("DOC") has a three step administrative remedy procedure which governs the filing of grievances. See, e.g., Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008). The DOC's Administrative Remedy Procedure ("ARP") first encourages inmates to attempt informal communication with responsible authorities at the facility at which the problem arose. DOC ARP § .0301(a). If informal resolution is unsuccessful, the DOC ARP provides that any inmate in DOC custody may submit a written grievance on Form DC-410. DOC ARP § .0310(a). If the inmate is not satisfied with the decision reached at the step one level of the grievance process, he may request relief from the facility head. Id. at § .0310(b)(1). If the inmate is not satisfied with the decision reached by the facility head, he may appeal his grievance to the secretary of correction through the inmate grievance examiner. Id. § .0310(c)(1). The decision by the inmate grievance examiner or a modification by the secretary of correction shall constitute the final step of the ARP. Id. § .0310(c)(6).

1.    Traditional Grievances

The record before the court indicates that plaintiff filed the following grievances: (1) No. 3100-07-2455 on December 18, 2007; (2) No. 3100-07-2466 on December 23, 2007; (3) No. 3100-07-2467 on December 23, 2007; (4) No. 3100-07-2468 on December 24, 2007; (5) No. 3100-07-2469 on December 25, 2007; and (6) No. 3100-07-2470 on December 26, 2007. (Def.s' Mem. in Supp. of JOP, Exs. A and C.) All of plaintiff's grievances, with the exception of grievance No.

6

3100-07-2455, were returned to plaintiff unprocessed. Prison officials informed plaintiff that the grievances could not be accepted until previously filed grievance number 3100-07-2455 completed step two of the grievance procedure. (DE # 21, Ex. C.) The Supreme Court has stated that the PLRA requires proper exhaustion. Woodford, 548 U.S. at 84. The Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Id. at 90. As stated, grievances 3100-07-2466, 3100-07-2467, 3100-07-2468, 3100-07-2469, and 3100-07-2470 were returned to plaintiff unprocessed for failure to comply with the appropriate grievance procedures. Therefore, plaintiff did not properly exhaust his administrative remedies for these grievances.

The court now turns to plaintiff's grievance number 3100-07-2455. Plaintiff exhausted this grievance on February 17, 2008. (DE # 21, Ex. A.) Plaintiff filed his complaint in this action on January 24, 2008. Accordingly, plaintiff filed his complaint while he was in the process of exhausting his administrative remedies. Exhaustion of administrative remedies during the course of litigation is insufficient to prevent dismissal. See Johnson v. Jones, 340 F.3d 624, 627-28 (8th Cir. 2003) ("permitting exhaustion *pendente lite* undermines the objectives of section 1997e(a) . . ."). Because plaintiff filed this action prior to completing the administrative remedy procedure, he has not properly exhausted this claim.

2.   Emergency Grievances

Plaintiff argues that he has exhausted his administrative remedies because he filed three emergency grievances. Plaintiff's first alleged emergency grievance was dated December 25, 2007, and received by prison officials on December 25, 2007. (DE #37, p. 11.) The second alleged emergency grievance was dated February 6, 2008, and accepted by prison officials on February 13,

7

2008. (DE # 37, p. 10.) The third alleged emergency was dated January 22, 2008, and was received
by prison officials on February 22, 2008. (DE # 37, p. 13.) Plaintiff filed this action on January 24,
2008.[3] Both plaintiff's second and third alleged emergency grievances were submitted subsequent
to the date he filed this action. Thus, because plaintiff filed this action prior to filing his second and
third emergency grievances, he has not properly exhausted these grievances. See Johnson, 340 F.3d
at 627-28. Accordingly, the only emergency grievance at issue is the grievance filed on December
25, 2007.

Defendants argue that plaintiff's December 25, 2007 grievance does not satisfy the DOC's
ARP because it does not comply with the DOC's definition of an emergency grievance. Plaintiff's
emergency grievance provided as follows:

> On 12-19-2007 I arrived at Central Prison from Wake County Jail due
> to Dr. Umesi inadequately treating my diabetes. Since being here all
> day my sugar level are over 4 to 5 Hundred. I've declared medical
> emergencies on numerous occations [sic] and requested to check my
> urine for diabetic tretons which is a sugar build up effecting your
> kidney's [sic] causing failure, unconsciousness & even death. I'm
> suffering from: Nausea, Vomiting, thirtiness [sic] dehydration,
> stumach [sic] pains, blurred vision, swellen [sic] in my legs and feet,
> lost of appitite [sic] weight loss-etc. I talked to my Doctor
> Christopher and Mateko [sic] on several occasions, but they are not
> doing anything. I also wrote Dr. Kyermaten [sic] and have yet
> received a response. Therefore, due to the medical staff not being
> able to adequately treat my diabetes, I request to be sent to an outside
> medical facility to receive specialized attention from a
> endocrenologist [sic] who specialized in treating severe diabetic cases
> if not send me back to the Wake County Jail.

---

[3] Plaintiff dated this grievance January 22, 2007. However, this date appears to be an
error because plaintiff was not transferred to DOC custody on December 18, 2007. (DE # 19,
Ex. A.) Moreover, the grievance was not accepted by prison officials until February 22, 2008.
(DE # 37, p. 13.)

8

(DE # 37, p. 11.) In response, the DOC delayed this grievance, explaining that it could only be accepted when his current grievance (No. 3100-07-2455) completed step two of the ARP. (DE # 37, p. 11.)

Defendants argue that plaintiff's December 25, 2007 grievance was properly delayed because it did not comply with the DOC's definition of an emergency grievance. The DOC defines emergency grievances as "matters which present a substantial risk of physical injury or other serious and irreparable harm to the grievant if regular time limits are followed." DOC ARP § .0308(a). The Fourth Circuit has found that the label "emergency grievance" does not dictate that a grievance is in fact an emergency grievance. See Moore, 517 F.3d at 729. Rather, a court must examine the content of a grievance to determine whether the grievant has indicated that his inability to receive prompt relief would "present a substantial risk of physical injury or other serious and irreparable harm" as required by the DOC's Administrative Remedies Procedure. Id. (quotation omitted).

In this case, plaintiff does not allege that his situation presents a substantial risk of physical injury or other serious irreparable harm as required by Administrative Remedy Procedure § .0308(a). Instead, plaintiff contends that he is unhappy with the medical treatment he is receiving and requests that he be sent to an outside medical facility to see a specialist or be transferred back to the Wake County Jail. Plaintiff makes clear in his grievance that he was receiving treatment for his diabetes at the time he filed the grievance; he references contact with his doctor on several occasions to discuss his medical condition. This fact is significant because at the time he filed his self-described emergency grievance on December 25, 2007, he had only been incarcerated in DOC custody for seven days. Accordingly, the evidence in the record demonstrates that plaintiff's self-described emergency grievance does not sufficiently allege serious irreparable harm as required by § .0308(a).

9

The DOC's ARP additionally provides an alternative to filing an emergency grievance for inmates who are in need of urgent medical care. In particular, the ARP provide that these inmates "may present [themselves] to a member of the medical or custodial staff, who shall handle the matter according to emergency health care procedures set out in the Health Care Manual." DOC ARP § .0308(b). Plaintiff's grievance makes clear that he utilized this option. Because plaintiff was continuously monitored by medical staff, his grievance submitted on December 25, 2007 did not constitute an emergency. Instead, plaintiff's self-styled emergency grievance appears to be an attempt to circumvent the DOC's established ARP. Based upon the foregoing, the court finds that plaintiff's December 25, 2007 grievance does not constitute an emergency grievance within the terms of the DOC's ARP, and was properly treated under the non-emergency provisions of the ARP. Plaintiff's December 25, 2007 grievance was correctly delayed and returned to him by the screening officer pending the step two disposition of grievance number 3100-07-2455. Thus plaintiff has not properly exhausted his December 25, 2007 grievance before filing this action, and the court dismisses this action without prejudice for failure to exhaust administrative remedies.

## CONCLUSION

Because plaintiff filed this action prior to completing the administrative remedy procedure, he has not properly exhausted his claim. Therefore, the motion for judgment on the pleadings (DE # 58) of defendants Branker and Harris and the motion for summary judgment (DE # 72) filed by defendants Kyerematen, Lightsey, and Metiko are GRANTED, and plaintiff's claim is DISMISSED without prejudice to allow him the opportunity to exhaust his administrative remedies. As a result, plaintiff's motion for discovery and for re-evaluation of the preliminary injunction (DE # 44),

10

defendant Branker's motion to dismiss (DE # 60), and the motion for extension of time (DE # 62)

are DENIED as moot.

SO ORDERED, this the 14 day of September, 2010.

LOUISE W. FLANAGAN

Chief United States District Judge

11